UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL ANTHONY SIMMONS,

              Petitioner,

v.

DENNIS STRAUB,

              Respondent.

_____/

Case No. 1:22-cv-845

Hon. Hala Y. Jarbou

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that the district court has the duty to "screen out" petitions that lack merit on their face).

A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006).

After undertaking the review required by Rule 4, Magistrate Judge Ray Kent concluded that the petition might be barred by the one-year statute of limitations. Judge Kent permitted Petitioner, by way of an order to show cause, an opportunity to demonstrate why his petition should

not be dismissed as untimely. Petitioner filed his response to the order to show cause on October 24, 2022. (ECF No. 8.)

<u>**Discussion**</u>

### I.      Factual Allegations

Petitioner Michael Anthony Simmons is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. On March 7, 1997, following an eight-day jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On March 24, 1997, the court sentenced Petitioner to life imprisonment without parole for murder to be served consecutively to a sentence of 2 years for felony-firearm.

On September 13, 2022, the United States District Court for the Eastern District of Michigan transferred a habeas petition to this Court. It was a petition Petitioner hoped to file in the Eastern District of Michigan if that Court reopened a habeas case that Petitioner had filed more than 20 years earlier, *Simmons v. Straub*, No 2:00-cv-74198 (E.D. Mich.). The Eastern District of Michigan declined Petitioner's invitation to reopen that case—a case that Petitioner voluntarily dismissed two decades earlier—because Petitioner's return to the court was simply too late. Nonetheless, recognizing that the proposed petition purported to raise weighty new issues, rather than simply dismissing the petition, the Eastern District of Michigan transferred the petition here, where venue is proper.

2

The transfer of the petition to this Court is somewhat ironic in that Petitioner first filed an identical petition here on November 2, 2021. *Simmons v. Schiebner*, No. 1:21-cv-925 (W.D. Mich.). Before the Court could consider the petition, Petitioner voluntarily dismissed it and then refiled it in the Eastern District of Michigan. So now, almost a year later, the Court will take up preliminary review of the petition.

The transferred habeas petition raises two grounds for relief:

I.      Petitioner was denied his right under the 6th Amendment to effective assistance of trial counsel where trial counsel failed to convey a plea offer that had been made to counsel.

II.     Petitioner was denied his right under the 6th Amendment to effective assistance of appellate counsel where appellate counsel did not raise the issue raised here, i.e. that trial counsel was ineffective for failing to convey a plea offer.

(Pet'r's Br., ECF No. 1, PageID.13–14.)

## II.     Statute of Limitations

Certainly there can be no surprise that the passage of nearly a quarter-century between Petitioner's conviction and the present petition raises concerns regarding the timeliness of the petition. Petitioner's application appears to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The claims Petitioner raised in those courts, however, were not related to the claims he raises in the present petition. As set forth in more detail below, Petitioner contends he was entirely unaware that the prosecutor had tendered a plea offer because Petitioner's counsel never communicated that offer to Petitioner.

The Michigan Supreme Court denied Petitioner's application for leave to file a direct appeal on November 2, 1999. (Pet'r's Br., ECF No. 1, PageID.22.) Petitioner did not petition for certiorari to the United States Supreme Court. (*Id.*) The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332–33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on January 31, 2000.

Petitioner had one year from January 31, 2000, until January 31, 2001, to file his habeas application. Petitioner filed his first habeas petition in the United States District Court for the Eastern District of Michigan during that period, on September 13, 2000. *Simmons v. Straub*, No. 2:00-cv-74198 (E.D. Mich.) Petitioner moved to voluntarily dismiss that petition, however, because he had not exhausted his remedies in state court for at least some claims. The court granted that relief on February 28, 2001. (E.D. Mich. Order, ECF No. 1, PageID.203–205.) At that time, Respondent had answered the petition and did not contend that the claims raised were not exhausted. Nonetheless, the court accepted Petitioner's claim that he wanted to exhaust state court remedies even though Petitioner did not identify the claims that he believed to be unexhausted. (*Id.*, PageID.204.)

The court instructed Petitioner that the time the federal petition was pending would be excluded from a subsequent statute of limitations computation and directed Petitioner, following exhaustion, to return to the court and move to reinstate and amend his habeas petition. (*Id.*, PageID.205.) Petitioner did not return to the Eastern District Court until November of 2021. In fact, based on the chronology offered by Petitioner, he did not seek relief in the state courts either— at least not until March 7, 2008, when he filed a motion for relief from judgment in the trial court. (Pet'r's Br., ECF No. 1, PageID.19.) The trial court denied relief on May 23, 2008. (*Id.*) Petitioner sought leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave on June 11, 2009, and March 29, 2010, respectively. (*Id.*)

The issues raised in Petitioner's first motion for relief from judgment did not include Petitioner's claim that counsel failed to communicate a plea offer. At that time, Petitioner reports, he was simply not aware that such an offer had been made.

Petitioner claims that he was not idle during the years between the dismissal of the federal petition and the commencement of the motion for relief from judgment. To the contrary, to the extent he was able, despite his imprisonment, he worked diligently on his own and with the assistance of others to obtain information that might show that his incarceration was wrongful. By letters dated May 30, 2003, Petitioner inquired of his counsel, Frederick Milton, and the prosecutor, Chris Ann Johnson, whether any plea offers had been made. (ECF No. 1. PageID.91–92.) They did not respond.

Petitioner wrote the prosecutor again on January 5, 2009, seeking information regarding plea offers. (*Id*., PageID.122.) Petitioner's wife made a Freedom of Information Act request of the prosecutor's office a month later. The request was broad and the response included many documents. On March 30, 2009, she narrowed the request, specifically asking for a "plea offer letter." (*Id*., PageID.123.) The March 30, 2009, response to that request, (*id*.), included a plea offer letter dated December 31, 1996. It is reproduced below.

December 31, 1996

Mr. Frederick A. Milton
Attorney at Law
423 S. Westnedge
Kalamazoo, MI 49007

Re:  People v Michael Anthony Simmons
     File No. B 96-1350 FC

Dear Mr. Milton:

As you know, I have been assigned to prosecute the above matter.
I offer the following for your client's consideration:

1.  The Defendant would tender a plea to Murder in the second
degree as a second offender under the Habitual Offenders Act.

2.  There would be a sentence agreement in this matter of 25 to
50 years incarceration.

3.  Restitution.

4.  This is conditioned on the Defendant having two prior adult
felony convictions.

I have just been informed that our adjourned status conference
will be on January 8, 1997.  We can discuss this further at that
time or, if you would like, feel free to contact me about this
matter.

                    Sincerely,


                    Chris Ann Johnson
                    Assistant Prosecuting Attorney

CAJ/cal

(ECF No. 1, PageID.70.) Petitioner did not receive the letter until after he filed his application for

leave to appeal to the court of appeals. It appears, nonetheless, that he may have raised the plea

offer issue by way of a motion for reconsideration. *See* https://www.courts.michigan.gov/c/courts/

coa/case/290973 (last visited Dec. 6, 2022). He certainly raised it in the Michigan Supreme Court

by way of one or more motions to remand, which were denied. *Id.*; (Pet'r's Mot. to Remand, ECF

No. 1, PageID.132–149).

The plea offer letter was unsigned. Petitioner attempted to confirm that the offer had, in

fact, been communicated to counsel. He sought the records from the January 8, 1997, status

conference, to no avail. (ECF No. 1, PageID.125, 129–130.) Other than the prosecutor's

submission of the letter in response to a request for a plea offer, it was not readily apparent that

the offer had been communicated. Nonetheless, when he presented his motion to remand to the Michigan Supreme Court, he posited that it had been communicated.

Moreover, after the Michigan Supreme Court denied leave to appeal, Petitioner filed a motion seeking permission to file a second or successive habeas petition in the federal court based on the claim that he had discovered new evidence in 2009 that "defense counsel failed to communicate a plea offer . . . ." *In re Michael A. Simmons*, No. 12-1754 (6th Cir.) (Mot., Doc. 1-1, Page 3.) In his brief, Petitioner argued:

> Recently, Petitioner has discovered a document proving that the Kalamazoo County Prosecutor Office had made a written formal offer of an attractive plea bargain to Petitioner to be conveyed to him by his attorney.

*Id.*, (Pet'r's Br., Doc. 1-1, Page 12.) The specific issue that Petitioner sought to raise by way of this second or successive petition was:

> Petitioner was deprived of the effective assistance of counsel where defense counsel failed to communicate to him a formal written plea ordered by the state and appellate counsel failed to litigate this claim on direct appeal.

*Id.*, (Pet'r's Br., Doc. 1-1, Page 8.) Those two claims—that Petitioner's trial and appellate counsel rendered ineffective assistance with regard to the plea offer—are exactly the same claims that Petitioner raises in the present petition.

Petitioner argued to the Sixth Circuit Court of Appeals that he had exhausted his state court remedies by presenting the issue to the Michigan Supreme Court. On October 31, 2012, the Sixth Circuit denied the motion because the proposed petition was not second or successive. It was not second or successive because his first petition had never been resolved on the merits.

Although the federal appellate court informed Petitioner that he was free to file his petition in the federal district court, instead, on June 25, 2013, Petitioner attempted to file in the state courts another motion for relief from judgment, this time basing the motion on the uncommunicated plea offer. The motion was returned unfiled.

Petitioner continued to attempt to strengthen his claim. Petitioner communicated with his attorney, but received no response. He filed a request for investigation with the attorney grievance commission regarding counsel's failure to communicate the plea offer or to respond to Petitioner's requests. (ECF No. 1, PageID.153.) To determine whether or not the plea offer provided had been communicated, Petitioner submitted a renewed request to the prosecutor's office. This time, he specifically requested "plea offers . . . made . . . ." (*Id*., PageID.160–161.) That request was rejected. Eventually, however, Petitioner's spouse provided a new request during 2015. The September 23, 2015, response to that request, (*id.*, PageID.169–173), included felony progress notes that made specific reference to the communication of the plea offer at the January 8, 1997, status conference. The notes are reproduced below:



(*Id*., PageID.171.) Petitioner's wife did not receive these notes until September 23, 2015. Petitioner reports that he was not made aware of them until much later. He reports it was October/November 2016 before he was aware of them.

Petitioner converted that awareness into action when, on July 25, 2017, he filed a successive motion for relief from judgment. (Pet'r's Br., ECF No. 1, PageID.20.) Petitioner reports that the motion was denied on February 22, 2019. (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 1, PageID.191–195.) He sought leave to appeal in the Michigan Court of Appeals and then the Michigan Supreme Court. Those courts denied leave by orders entered December 13, 2019, and November 24, 2020, respectively. (Pet'r's Br., ECF No. 1, PageID.21.)

Petitioner then filed his application, first in this Court on November 2, 2021, and then in the Eastern District of Michigan on November 7, 2021.

As measured by the § 2244(d)(1)(A), the petition is undeniably late. But Petitioner did not contend his petition was timely under that section. Instead, at least in his initial submission to this Court, he claimed his petition was timely as measured under 28 U.S.C. § 2244(d)(1)(D). Under that subparagraph, the period did not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id*.

Magistrate Judge Kent addressed that claim in his opinion directing Petitioner to show cause. In that opinion, the Court noted that the latest possible date the statute could have begun to run is the date Petitioner actually discovered the factual predicate of the claim presented. Petitioner claimed that he discovered the factual predicate during October/November 2016. Giving Petitioner the benefit of every possible doubt, Magistrate Judge Kent addressed Petitioner's argument presuming that Petitioner discovered the factual predicate on November 30, 2016, and could not have, using due diligence, discovered the factual predicate before that date. Under that presumption, the latest date the period of limitation could have started to run is November 30, 2016. Petitioner filed almost five years after that date, so obviously he filed more than one year after the period of limitations began to run. Thus, absent tolling, his application would have been time-barred.

The running of the statute of limitations, however, is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v.*

*Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner filed such a motion on July 25, 2017. Therefore, the period of limitation stopped running then, after it had run for 237 days.

The period remained tolled until the Michigan Supreme Court denied leave to appeal on November 24, 2020. The period then ran for 128 more days, until Thursday, April 1, 2021. Because Petitioner did not file by that date, his petition appears to be late, even measured by the latest possible date he could have discovered the factual predicate for his claim.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g.*, *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case for the period of time after April 1, 2021. Petitioner's failure to rely on equitable tolling was certainly understandable. Petitioner had enjoyed the benefit of legal representation for virtually all of the time after he purportedly discovered the factual predicate of his claim. The same counsel that represents Petitioner before this Court represented him at all levels of the state court during Petitioner's pursuit of his most recent motion for relief from judgment.

Magistrate Judge Kent further noted that the fact that Petitioner was untrained in the law or may have been unaware of the statute of limitations would not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling." (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991))). Even garden-variety excusable neglect by counsel when calculating the period of limitation would not warrant equitable tolling. *See Maples v. Thomas*, 565 U.S. 266, 282 (2012) (citing *Holland v. Florida*, 560 U.S. 631, 651–52 (2010)) (recognizing that "a garden variety claim of excusable neglect, . . . such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, . . . does not warrant equitable tolling" (internal citations omitted)); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.").

It may be that such neglect delayed the filing in Petitioner's case. Petitioner argues:

> We contend that the date on which the factual predicate of Petitioner's claim was discovered was October-November 2016. Petitioner then had 1-year from that date to take action in the Michigan courts by filing a successive motion for relief from judgment, which he did, in the summer of 2017. When the Michigan courts finally denied relief on November 24, 2020, Petitioner then had one year within which to file a petition for habeas corpus, or until November 24, 2021. This petition is, therefore, timely.

(Pet'r's Br., ECF No. 1, PageID.26.) But Petitioner cites no authority for the proposition that he is entitled to stack two 1-year deadlines to achieve timeliness. To the extent Petitioner seeks to rely on 28 U.S.C. § 2244(d)(1)(D), his time period does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id*. That means the period started to run by Petitioner's own admission, no later than November 30, 2016. Then, when he filed his motion for relief from judgment, the running of

the period was tolled, but that did not wipe away the time that had run already. And the time began to run again after the Michigan Supreme Court denied leave to appeal on Petitioner's appeal of the denial of the motion for relief from judgment. Petitioner did not get a new one-year period starting on that date.

In short, based on Petitioner's allegations and initial argument, it does not appear that Petitioner would be entitled to equitable tolling of the statute of limitations for the relevant period.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327) (addressing actual innocence as an exception to procedural default). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 399–400.

In the instant case, Petitioner did not claim that he was actually innocent, and he proffered no new evidence of his innocence, much less evidence that made it more likely than not that no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327, 329. Indeed, the relief Petitioner seeks is the plea deal that counsel failed to communicate, a deal that includes his plea of guilty to second-degree murder. Because Petitioner has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C.

§ 2244(d)(1). His petition therefore would be time-barred as measured by the date he claims the factual predicate was properly discovered.

But Magistrate Judge Kent was not convinced that November of 2016 was the proper date by which Petitioner could have discovered the factual predicate of his claim. And the undersigned is not convinced either.

Petitioner's petition depends significantly on a strained interpretation of the felony progress notes. Petitioner knew back in 2009 that the prosecutor's office had made an offer—the December 1996 letter offer. That letter also indicates that the offer would be discussed at the January 8, 1997, status conference. The progress notes only show that the offer communicated by the letter had, indeed, been discussed on January 8, 1997. The notes add nothing of significance to the fully developed factual predicate that Petitioner presented to the Sixth Circuit in 2012 or the Michigan Supreme Court in 2010.

Petitioner suggests otherwise. He claims the note shows not only that the offer was communicated on January 8, 1997, but that it was renewed on the first day of trial, February 25, 1997. Certainly, a renewal of the offer would warrant a new communication between counsel and his client. But the notes do not support Petitioner's claim at all.



The note reflects the events of January 8, 1997. The note indicates on that date the "offer [was] extended as in offer letter." Petitioner reads that statement of "Next Sch[eduled] Date" of February 25, 1997, and "Next Scheduled Event" of Trial, to mean that the note refers to an offer that was

communicated on February 25, 1997, and at the trial. That interpretation is absurd. The note that follows the January 8, 1997, note relates to a motion hearing on February 10, 1997. (ECF No. 1-29, PageID.171.) The note after that, dated February 25, 1997, is for the event "jury trial held." (*Id.*) The notes for those dates make no mention of a plea offer. The record Petitioner provides does not support his claim that the felony progress notes revealed a new factual predicate.

Properly disregarding Petitioner's strained interpretation of the note, the factual predicate for his claim was available to him in 2009. He presented a fully developed factual and legal argument of his claim to the Michigan Supreme Court in 2010 and the Sixth Circuit Court of Appeals in 2012. Neither the petition, the brief, nor Petitioner's many exhibits offer any explanation as to why he waited years after he was aware of the plea offer to present that claim to the state court by way of a proper motion. The felony progress notes that came into Petitioner's wife's possession in 2015 did nothing more than confirm the offer that Petitioner already knew about. Moreover, in the meantime, it appears that Petitioner's trial counsel passed away during the summer of 2011. *See* https://obits.mlive.com/us/obituaries/kalamazoo/name/frederick-milton-obituary?id=21934770 (last visited Dec. 5, 2022).

Accepting Petitioner's interpretation of the felony progress notes, and then choosing the latest possible date that Petitioner's due diligence properly yielded those notes, his claim is several months late. But considering the date Petitioner first became aware of the plea offer that his counsel allegedly failed to pass on to him, and his presentation of that claim to state and federal courts years ago, his claim is several years too late. Either way, Petitioner has failed to comply with the AEDPA statute of limitations and his petition would be properly dismissed.

Perhaps in recognition of that result, Petitioner has changed tack in his response to the show cause order. Rather than relying on equitable tolling or the date he purportedly discovered

15

the new factual predicate, he claims instead that the state created an impediment to Petitioner's filing for habeas relief. (Pet'r's Resp., ECF No. 8, PageID.21.) The period of limitation commenced, Petitioner argues, on the "date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action . . . ." 28 U.S.C. § 2244(d)(1)(B).

The impediment, Petitioner claims, is the State of Michigan's refusal to permit Petitioner to access the legal writer program. (Pet'r's Response, ECF No. 8, PageID.21.) Petitioner reports that the State of Michigan has refused him access because he has a high school diploma. (*Id.*) Petitioner recounts his attempts to access the legal writer program from 2000 to 2017. (Pet'r's Aff., ECF No. 8-1, PageID.33–37.)[1]

---

[1] The MDOC reports that "[t]he Legal Writer Program provides eligible prisoners in Correctional Facilities Administration (CFA) institutions with legal assistance on matters relating to their criminal conviction or conditions of confinement. Only prisoners not represented by counsel who are unable to effectively help themselves by using the law library or other available legal resources are eligible to receive Legal Writer Program services." MDOC Policy Directive 05.03.116 ¶ S (eff. Apr. 5, 2021). The directive indicates that a prisoner is eligible to receive Legal Writer Program services if he or she meets any of the following criteria:

1. Does not have a verified GED or high school diploma.

2. Does not speak, read, or write English.

3. Has a documented physical or mental impairment or a learning disability that may affect their ability to use the law library to prepare and file a legible and coherent pleading.

4. Is undergoing reception center processing.

5. Is housed in any form of segregation other than temporary segregation.

6. Is housed in a Department operated inpatient medical unit.

7. Is housed in protective housing, or other non-traditional general population housing, that does not allow for direct access to legal research materials as approved by the Deputy Director or designee.

*Id.* ¶ T. Petitioner does not claim that he meets any of the criteria for eligibility.

Petitioner does not offer any reason that he, specifically, required access to the legal writer program to adequately access the habeas remedies afforded by this Court. Instead, he argues, generally, that inmates are typically unable to read and understand library material and, therefore, cannot meaningfully access the courts by way of state-provided law libraries. (Pet'r's Resp., ECF No. 8, PageID.26) ("[I]t is ludicrous to believe that inmates with a mere high school diploma are able to conduct **meaningful** legal research and effectively seek redress of their grievances without the aid of professional legal assistance." (emphasis in original)). Petitioner does not suggest that he is somehow less able to read and understand library material because of some limitation unique to him; rather, he claims only that prisoners generally are not able to read and understand library material. Essentially, Petitioner contends that the State of Michigan's failure to provide legal writers for the prison population is a violation of the First Amendment right to access the courts. Petitioner cites no federal authority supporting a constitutional requirement that all prisoners be provided access to a prison legal writer program. The Court concludes, therefore, that Petitioner has failed to show a state-created impediment that violates the Constitution.

Moreover, Petitioner has failed to show that his exclusion from the legal writer program prevented him from filing anything. Petitioner's affidavit indicates that he had some help from another prisoner to file his initial habeas petition. But the affidavit suggests that Petitioner filed the Sixth Circuit motion seeking permission to pursue a second or successive petition on his own. That motion raised the same issue raised in the instant petition. If exclusion from the legal writer program did not prevent Petitioner from filing his Sixth Circuit motion, it did not prevent him from filing his petition either.

Additionally, Petitioner had the benefit of retained counsel for years before he filed the instant petition, including more than a year when the period of limitation was running—when

17

Petitioner did not also enjoy the benefit of statutory tolling. While Petitioner was assisted by counsel, it simply cannot be said that he was prevented from filing the petition by his exclusion from the legal writer program.

In short, Petitioner has failed to show that the State of Michigan's exclusion of Petitioner from the legal writer program was an impediment to the filing of the instant petition, he has failed to show that the exclusion violated his constitutional rights, and he has failed to show that the exclusion prevented him from filing the petition. The alternative period of limitation provided by 28 U.S.C. § 2244(d)(1)(B), therefore, does not render the petition timely.

For all of the reasons stated above, the petition is untimely.

## III.    Certificate of appealability

The Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

Petitioner's application is untimely and, thus, barred by the statute of limitations. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.*

Reasonable jurists could not find it debatable whether Petitioner's application was timely. Petitioner does not contest the Court's recounting of the procedural history and the relevant time periods. Petitioner does not claim that he is entitled to equitable tolling or that he is actually innocent. Petitioner's only contention is that the state impeded his timely filing of a habeas petition by excluding him from the legal writer program. For the reasons set forth above, the Court concludes that Petitioner's claim is simply wrong. Therefore, a certificate of appealability will be denied. Nonetheless, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Court will enter an order denying a certificate of appealability and judgment denying the petition with prejudice as untimely.

Dated: December 15, 2022                            /s/ Hala Y. Jarbou
                                                    HALA Y. JARBOU
                                                    CHIEF UNITED STATES DISTRICT JUDGE